795 So.2d 410 (2001)
STATE of Louisiana
v.
Patricia L. FONTENOT.
No. 2001-KA-0178.
Court of Appeal of Louisiana, Fourth Circuit.
August 8, 2001.
*411 Harry F. Connick, District Attorney, Anne M. Dickerson, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.
TERRI F. LOVE, Judge.

STATEMENT OF THE CASE:
On September 14, 2000, the defendant, Patricia L. Fontenot, was charged by bill of information with possession with intent to distribute crack cocaine. La. R.S. 40:967(B)(1). On September 26, 2000, the bill was amended to include a charge for possession of alprazolam, La. R.S. 40:969(C). The State also charged a co-defendant, *412 Rhonda James, with possession of crack cocaine. The defendant was arraigned and pled not guilty to the multiple bill. She filed a motion to suppress which was denied October 6, 2000. On November 6, 2000, the defendant withdrew her former plea and pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The State then filed a multiple bill. Thereafter, the defendant pled guilty. The trial court found the defendant to be a second offender and sentenced her to fifteen years without benefit of parole, probation, or suspension of sentence on the possession with intent to distribute crack, and five years at hard labor on the possession of alprazolam. The sentences were ordered to be served concurrently.

ERRORS PATENT:
La. R.S. 40:967(B)(4)(b) provides that only the first five years of a sentence for possession of cocaine with the intent to distribute shall be served without benefit of parole, probation, or suspension of sentence. Here, the defendant was sentenced to fifteen years without benefit of parole, probation, or suspension of sentence. The sentence is amended to provide for the denial of those benefits as to the first five years only.

FACTS:
Officer Jeff Sislo testified that on September 7, 2000, he and Detective Donald Polk received information from a reliable confidential informant that an "in shape" woman named "Patty" was selling crack and powder cocaine from 4408 Shalimar Street. The officers went to the address that evening and saw a blue Acura Legend, a car they knew to be owned by the defendant, parked in the driveway. Within fifteen minutes, they witnessed the defendant and a black male make a hand to hand exchange at the door. The officers radioed for backup, but officers were unable to apprehend the man. Five minutes later, a car drove up with a white man, William Broussard, driving and a white woman, Rhonda James, in the passenger seat. James went to the door and exchanged currency for an object. The car left, but was stopped by officers a distance away. The officers saw crack on the console, and the two were arrested. After James was advised of her rights, she said she bought the cocaine from Patty on Shalimar Street.
Officer Sislo left Shalimar Street after he learned this information and began to prepare a warrant. As he was going to the magistrate, he learned that the defendant had left the house in her car. The defendant was stopped by other officers, but no contraband was found. The defendant was arrested and returned to her house. At which point, a female officer, Kira Godchaux, was present. The defendant said she had "$300.00 worth" in her bra. Officer Godchaux, conducted a search of the defendant and found powder cocaine and blue pills underneath her bra. Another officer searched her purse and found $249.00.
Officer Sislo then informed the officers on the scene that a search warrant for the premises had been obtained. Officers found additional crack and powder cocaine on a shelf in the living room.
Detective Jake Schnapp testified that he and his partner, Detective Trent Cuccia, acted as the takedown unit for James and her companion, William Broussard, the driver. He saw the cocaine on the console, and arrested both parties. After being advised of her rights, James said she had bought the cocaine from Patty on Shalimar Street. Then Detective Schnapp learned the defendant had left the residence. He stopped the car, arrested her, took her back to the house, and secured it until the warrant could be obtained. He then called *413 for Officer Kira Godchaux to conduct a search of the defendant's person. He said that it was police procedure to have a female officer search a female defendant. Officer Godchaux informed the defendant that she was about to be searched. The defendant then admitted that she had "about $300 worth" of cocaine in her bra. Thereafter, the defendant retrieved the drugs for the officer. The search of the defendant took place in the front room of her house with Detective Cuccia and Detective Michael Hamilton present. The defendant did not disrobe during the search. Also, Officer Godchaux explained that she positioned herself so that no one else in the room could see the defendant remove the drugs from her bra.

ASSIGNMENT OF ERROR:
The defendant argues the trial court erred in denying the motion to suppress evidence because the defendant was under duress when she said she had $300.00 worth of drugs in her bra. She also argues there was no justification for entering the house before a warrant could be obtained, and that the warrant-less entry tainted the subsequent search. She does not argue that her arrest was illegal, or that the search incident to arrest was illegal. She does not argue that the warrant was not based on probable cause, or that the search subsequent to the warrant was illegal.
In reviewing a trial court's judgment concerning a motion to suppress, which it has based on live testimony, "the trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law, and the evidence must be viewed [in the light] most favorable to the party prevailing below." U.S. v. Coleman, 969 F.2d 126, 129 (5th Cir.1992) (quoting U.S. v. Muniz-Melchor, 894 F.2d 1430, 1433-34 (5th Cir.1990), quoting U.S. v. Maldonado, 735 F.2d 809, 814 (5th Cir.1984)).
A search is per se unreasonable when it is conducted without a warrant issued upon probable cause, subject to a few exceptions. State v. Raheem, 464 So.2d 293, 295 (La.1985). A search made incident to a lawful arrest is one such exception. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). State v. Wilson, 467 So.2d 503, 517 (La. 1985). As this Court noted in State v. Parker, 622 So.2d 791 (La.App. 4 Cir. 1993), the search of the defendant is legal if there is probable cause for his arrest. Id. at 793 (citing Chimel, supra, and Wilson, supra). However, as the Supreme Court observed in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), a search incident to a lawful arrest may not precede the arrest and serve as part of its justification. Id. at 67, 88 S.Ct. 1889. State v. Melton, 412 So.2d 1065, 1067 (La.1982).
Here, the defendant does not argue that there was not probable cause for her arrest, and indeed there was probable cause. She does not argue that the search incident thereto was illegal. She argues that she would not have made the statement that she had drugs under her bra if she had not been under duress to admit the drugs were there. The basis of the duress would be, presumably, that she feared a search by men. The argument is not supported by the facts. A female officer was on the scene. She had been called to the scene specifically because the defendant was a female in order to conduct a search of her person. Before the female officer even began the search, the defendant freely admitted that the drugs were under her bra, and in fact she herself removed them. She was never ordered to disrobe, and in fact did not disrobe. There was never a search of her person. The female officer took the precaution of blocking the view of the men while the defendant *414 reached under her bra. The facts do not support an argument of duress.
Furthermore, the drugs would have inevitably been discovered. Under the "inevitable discovery" doctrine, evidence found as a result of a violation of a defendant's constitutional rights, would be admissible if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The "inevitable discovery doctrine" has been followed by Louisiana courts. State v. Nelson, 459 So.2d 510 (La.1984); State v. Knapper, 626 So.2d 395, 396 (La.App. 4 Cir.1993). Here, the cocaine would have been inevitably discovered when the defendant was taken to Central Lockup.
Next, the defendant argues that because the officers entered the house before the warrant was obtained, the subsequent search was tainted. The evidence seized from the defendant's bra was seized pursuant to a search incident to arrest. There was no other search of the residence and no other evidence was seized until the warrant was obtained. The defendant does not argue that the warrant was not supported by probable cause, and it was so supported.
The trial court did not err in denying the motion to suppress.
This assignment is without merit.

DECREE
The conviction is affirmed. However, the sentence is amended to delete the denial of benefits of parole, probation or suspension of sentence after the first five years.
AFFIRMED AND AMENDED.