|,WILLIAM H. BYRNES, III, Chief Judge.
Pursuant to a Crosby guilty plea, Jose Sanchez, a/k/a Jose Estevez, appeals his conviction and sentence for possession of crack cocaine. We affirm.

Procedural History

On November 20, 2002, Sanchez was charged with one count of simple possession of cocaine.[1] On April 25, 2003, the trial court heard and denied his motions to suppress the evidence and statement. Sanchez withdrew his plea of not guilty and entered a plea of guilty as charged, reserving his right to appeal the trial court’s ruling on his suppression motions pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Sanchez waived all delays, and the trial court sentenced him to serve eighteen months at hard labor. In return for his plea, the State agreed not to file a multiple bill against the defendant.

Facts

On November 8, 2002, police officers received a hotline tip of narcotics activity at 6316 Ransom Street. The officers set up a surveillance of that residence |2and soon observed a man and woman pull up in a car. The man exited the car and conducted a hand-to-hand transaction whereby the man gave someone standing outside the residence some money, in exchange for which he received an unknown object. The officer conducting the surveillance radioed a back-up team, describing the man, *829 his car, and the license plate number of the car.
The back-up officers soon saw the car and stopped it. As one officer approached the driver’s side of the car, the other officer approached the passenger side. The passenger, later identified as the defendant Jose Sanchez, began speaking with the officer at his door. The other officer, who was stationed at the driver’s side, saw Sanchez trying to hide a “large white rock of compressed matter” under his left leg as he conversed with the officer outside the passenger door. Believing the rock was crack cocaine, the officer on the driver’s side of the car told his partner what he had seen, and the officers ordered Sanchez out of the car. The officers handcuffed Sanchez, advised him of his Miranda rights, and retrieved the rock of crack cocaine. Pursuant to Sanchez’ arrest, the officers searched him and seized three small bags of marijuana from his pocket.
On cross-examination, the officer who testified at the suppression hearing (the one who had observed Sanchez trying to hide the rock of crack cocaine under his leg) admitted the gist of the police report listed Sanchez as “Mr. Esteves”, but the officer testified that the report used that name because that was the name he gave the officers at the time of his arrest. Apparently Sanchez made a few other statements, but the State indicated at the suppression hearing that it intended to use no other statements Sanchez made when he was arrested.

_|jErrors Patent

A review of the record reveals no patent errors.

Motion to Suppress

Sanchez contends the trial court erred by denying his motion to suppress the evidence. Specifically, he argues that the officers did not have reasonable suspicion to stop his car because the other officer only observed a handshake between him and his uncle. He further argues that the hotline tip by itself was not sufficient to give the officers justification to stop him.
La.C.Cr.P. art. 215.1(A) provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
In State v. Thompson, 2002-0333 pp. 5-6 (La.4/9/03), 842 So.2d 330, 335, the Louisiana Supreme Court addressed the standard for determining if an officer has reasonable suspicion to conduct an investigatory stop:
Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on [the] individual’s right to be free from governmental interference. State v. Varnell, 410 So.2d 1108 (1982); State v. Bickham, 404 So.2d 929 (La.1981); State v. Blanton, 400 So.2d 661 (La.1981); State v. Ault, 394 So.2d 1192 (La.1981).... In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, “the whole picture,” must be considered. State v. Belton, 441 So.2d 1195, 1198 (La.1983) (citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).)
In Thompson, officers received a tip from an untested confidential informant that drugs were being sold from a certain location by a man named “James”, whose 14description the informant included in the tip, as well as a description of the car “James” drove and its license plate num *830 ber. The officers set up a surveillance of the residence and the car and observed the defendant exit the house and place something on the passenger floorboard of the targeted car. The defendant went back into the house and returned with a small infant whom he placed in the back seat of the car. At that point, an unknown man approached him, and the two men engaged in conversation. Soon the unknown man gave the defendant some money, and the defendant walked back to the car and retrieved an object from the front passenger floorboard. The defendant gave the man the object and then drove from the scene. Some officers tried to stop the man after he left the area, but upon seeing the officers he put something in his mouth and fled. Other officers followed the defendant and then detained him in another location as he was meeting with yet another man. As the officers approached the defendant, he threw something into the car. The officers detained the men and seized from the car a white tissue containing tin foils of heroin.
On review of this court’s reversal of the defendant’s conviction and sentence, the Supreme Court found that the officers had reasonable suspicion to detain the defendant. The Supreme Court stated:
... Although the tip provided the impetus for establishing the surveillance, the officers clearly did not stop the defendant based on this information alone. Indeed, the officers directly observed a hand to hand transaction indicative of a narcotics sale: the defendant received money in exchange for an object he brought from his residence; the unknown male with whom he made the transaction had just arrived and then left immediately after the transaction; and lastly, the unknown male suspiciously put something into his mouth before fleeing from approaching officers.... Accordingly, we hold that these activities, particularly when coupled with the tip that the defendant sold large | samounts of heroin, gave police more than a sufficient basis to stop the defendant. See, e.g., State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1270-71 (“The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant’s part, they would have had reasonable suspicion to detain him.”).
State v. Thompson, at pp. 5-6, 842 So.2d at 335.
In State v. Brown, 2000-2120 (La.App. 4 Cir. 12/19/01), 804 So.2d 863, writ denied 2002-0308 (La.2/7/03), 836 So.2d 85, officers received citizen complaints about crack cocaine dealing at a certain address. The officers set up a surveillance and observed several people go to the residence at that address and exchange money for small objects from someone at the gate of the residence. The officers then observed a car pull up to the residence and blow its horn. A woman came out of the residence, went to the car, and spoke with someone inside the car. The woman received a small object from the driver of the car and then went back inside the residence. Believing they had just witnessed a drug delivery, the officers stopped the car and observed three packages of cocaine lying in plain view inside the car. On review of his conviction, this court found that the tip and the suspected drug transactions from the residence gave the officers reasonable suspicion to stop the car. This court further noted that given the citizen complaints and the suspected drug transactions witnessed by the officers: “There is no question that the officers would have had reasonable suspicion to stop someone leaving the house after they had completed a narcotics transaction.” Id., at p. 9, 804 So.2d at 868.
*831 In the present case, as in Thompson, the officers had a hotline tip of drug sales from the residence, and during a surveillance of the residence, one officer |fisaw what appeared to her to be a hand-to-hand transaction wherein the defendant gave a person standing outside the residence money, in exchange for which he received an unknown object. Although Sanchez argues that these actions were really a handshake between him and his uncle, he presented no testimony of this assertion at the suppression hearing. This case did not have the added factors present in Thompson of someone putting something into his mouth and fleeing; however, pursuant to Brown, the tip and the observation of the hand-to-hand transaction gave the officers reasonable suspicion to stop the car in which Sanchez was a passenger.
In support of his argument that the officers did not have reasonable suspicion to stop him, Sanchez cites Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), where the United States Supreme Court held that the officers did not have reasonable suspicion to conduct an investigatory stop. The police received an anonymous tip that a man at a certain location, dressed in a certain way, was carrying a gun. The officer went to that location and saw the defendant, who matched the description. Even though the officers did not see the defendant engage in any suspicious activity, they stopped and detained him based on the tip. The United States Supreme Court found that the anonymous tip, which merely described the defendant and noted his location, did not give the officers reasonable suspicion to stop him. The Supreme Court noted that anonymous tips such as the one in that case, which gave no predictive information, gave the officers no means to test the informant’s knowledge or credibility. The Supreme Court stated:
An accurate description of a subject’s readily observable location and appear-anee is of course reliable in this limited sense: It will help the police correctly | identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person ....
Id., 120 S.Ct. at 1379.
In State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the anonymous tip noted that the defendant was selling drugs, described the vehicle the defendant drove, and related where his vehicle would be parked when he was not using it to sell drugs. The officers went to that location and saw the vehicle being driven away. The officers followed, and when the defendant stopped the vehicle, the officers detained him and called for a canine unit. They subsequently discovered contraband. Upon review of the trial court’s denial of the motion to suppress the evidence and this court’s denial of writs from that refusal, the Louisiana Supreme Court reversed, finding that the corroboration of the “tip” did not give the officers reasonable suspicion to stop the defendant. The Supreme Court noted that the tip, being anonymous, lacked an indicia of reliability or basis of knowledge, and the officers’ failure to corroborate any claim of criminal activity gave them an insufficient basis for a finding of reasonable suspicion to support the stop. The Supreme Court stated:
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had *832 noticed unusual or suspicious conduct on defendant’s part, they would have had reasonable suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant’s allegation of criminal activity |gwas reliable, we must conclude that there was no reasonable suspicion to detain defendant. The trial judge erred in holding otherwise.
Id., 98-2960 pp. 5-6, 721 So.2d at 1270-1271.
In State v. Lee, 485 So.2d 555 (La.App. 5th Cir.1986), also cited by Sanchez, the police stopped the defendant based solely on a tip.
In the present case, the tip by itself did not give the officers reasonable suspicion to stop the car in which the defendant was riding. However, the stop was not based solely on the tip, but rather upon the tip and the transaction observed by the officer who conducted the surveillance. The tip was corroborated by the surveillance, during which the officer observed Sanchez engage in a suspected drug sale and obtain the suspected drugs from a person standing outside the residence named in the tip. Thus, the officers had reasonable suspicion to stop the car.
Once the car was stopped, one officer saw Sanchez trying to hide under his leg what appeared to be a rock of crack cocaine. The officers removed Sanchez from the car, and the officers could see the rock lying on the seat where Sanchez had been sitting. The officers lawfully seized this evidence pursuant to the “plain view” exception to the warrant requirement. See State v. Jones, 2002-1171 (La.App. 4 Cir. 6/26/02), 822 So.2d 205. In addition, once the officers arrested Sanchez, they could lawfully seize the bags of marijuana they found in his pocket during the search pursuant to his arrest. See State v. Wilson, 467 So.2d 503, 515 (La.1985); State v. Fontenot, 2001-0178 (La.App. 4 Cir. 8/8/01), 795 So.2d 410, writ denied 2001-2627 (La.10/4/02), 826 So.2d 1114; State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942.
19Because the evidence was lawfully seized, the trial court did not err by denying the defendant’s motion to suppress the evidence.
Accordingly, the defendant’s conviction and sentence are affirmed.

AFFIRMED.

. Sanchez was also charged in case number 434-897 with one count of simple possession of marijuana, a misdemeanor, first offense. He pleaded guilty and reserved his right to appeal the trial court’s ruling on his motions to suppress the evidence and statement, and the trial court sentenced him to serve six months in parish prison. The Appellate Division of the Criminal District Court has jurisdiction to hear the appeal of the misdemean- or, and this appeal is limited to a review of the felony conviction.